W. C. MARTIN, RESPONDENT, v. FRANK H. CONNOR, ET AL., APPELLANTS.—— S. W. (2d) ——.

Kansas City Court of Appeals. May 8, 1939.

*J. W. Farrar, O. C. Phillips* and *John B. Gage* for appellants.

*Clay C. Rogers* and *Mosman, Rogers & Bell* for respondent.

SHAIN, P. J.—In this action the plaintiff seeks to recover against defendants for damages growing out of an alleged sale by plaintiff to defendants of one hundred and ninety-six yearling steers.

The defendants are members of an alleged co-partnership, engaged in the business of buying and selling live stock on commission under the name of John Clay & Company.

For cause of action, plaintiff states:

"Comes now the plaintiff, and with leave of court, files this, his amended petition for damages bringing in new parties defendant, and for his cause of action states that the defendants Frank H. Connor, A. F. Wilson, C. G. Smith and Maxwell B. Morgan are and were at all of the times mentioned herein partners and as such were engaged in business in the name of John Clay and Company, and as such partnership was and is engaged in the business of buying and selling livestock.

" 'Plaintiff states that on the 5th day of November, 1937, in Sherman County, Texas, he sold to the defendants one hundred ninety-six (196) yearling steers at and for the agreed price and sum of Eleven Thousand Three Hundred Ninety-one Dollars and Seventy five cents ($11,391.75); that thereafter and about the 9th day of November, 1937, the defendants repudiated said sale and refused to pay the agreed price to the plaintiff, and that thereafter and on the 10th

day of November, 1937, the plaintiff caused said cattle to be sold for the sum of Eight Thousand Eight Hundred Nineteen Dollars and Seventy-four cents (8,819.74) which was the best price obtainable and that by reason of the defendant's breach of said contract of sale, the plaintiff has been damaged in the sum of Two Thousand Five Hundred Seventy Two Dollars and One Cent ($2,572.01); that he has made demand upon the defendants for said sum, and that the defendants have refused and failed to pay the same.' "

Defendants make answer as follows:

"Come now the above named defendants, and enter their appearance in the above entitled court and cause, and file this, their separate answer to the amended petition of plaintiff filed herein.

"Defendants admit that they were at the times herein mentioned and are partners engaged in business in the name of John Clay and Company.

"Further answering, defendants state that they were engaged in the business of buying and selling live stock on commission, but deny that they are or were engaged in the business of buying and selling livestock on their own account.

"Defendants further deny that at the time mentioned in the petition, or any other time, the plaintiff sold to the defendants, the one hundred ninety six yearling steers at and for the price agreed therein or for any other price.

"Defendants further deny that at said time, or any other time they purchased said cattle from plaintiff, and agreed to pay the price mentioned in said petition, or any other price.

"Wherefore, having fully answered, defendants pray that they may be discharged, and have and recover their costs herein."

Trial was by jury and verdict was for full amount asked for and judgment was entered in accordance. The defendants appeal the judgment.

We will continue to refer to respondent as plaintiff and to appellants as defendants.

Defendants make assignments of error as follows:

## "I

"The court erred in rejecting competent, material and relevant testimony offered by appellants.

"(a) The testimony showing the executory contract of sale of Matlock Ranch Company, dated August 7, 1937, covered the sale of cattle referred to in the petition of Jett & Duden of Kansas City, Missouri.

"(b) The testimony showing that whatever was done with regard to the delivery of the cattle about November 5, 1937, was done in carrying out the contract with Jett & Duden.

"(c) Testimony showing that whatever connection John Clay &

Company had with the sale was solely as agents for plaintiff and not as principals.

"(d)   Testimony showing who shipped the cattle explaining the presence of the words 'a-c Jett & Duden' on draft and the intent and purpose of the bill of sale and draft.

"(c)   Oral testimony showing negotiations leading up to the sale, the time when, place where, and with whom, as purchaser, plaintiff agreed upon the price of $8.30 per hundred weight, and the actual parties in interest.

"II

"The court erred in admitting incompetent evidence, prejudicial to defendants, relating to an alleged delivery of the cattle in question by plaintiff to the defendant, John Clay & Company, and in refusing to permit cross examination of plaintiff concerning the improper conclusion of plaintiff so admitted.

"III

"The court erred in refusing defendants' peremptory instruction offered at the close of all the evidence, because plaintiff entirely failed to prove a contract of sale binding on or accepted by defendants or a sale by plaintiff to defendants as alleged in the petition."

The plaintiff in his brief seriously challenges defendants' assignments as being so defective as to present nothing for this court to review except as to ruling on demurrer.

The unfortunate practice of litigants who appeal, of ignoring the statutory provisions and salutory rules of courts touching assignments of error is of grave import.

The opinion in Pfotenhauer v. Ridgway, 307 Mo. 529, after a general discussion of failure to comply with the statute and rules, on l. c. 534-5 of the opinion, says:

"The right and the duty of this court to dismiss this appeal cannot be held to operate harshly, because the grounds therefor are based wholly upon the record as made by the appellants. While the law grants the right of a review to litigants in cases determined in the trial courts, as a condition precedent to the exercise of that right they are required to conform to the statute and the rules of the court regulating the same. Expressed differently, the right being wholly statutory, a compliance with its mandatory conditions is an essential requisite to its exercise."

So repeatedly have the courts of this State stressed the importance of compliance of the statutes and rules of court touching an appeal, it would appear that a counsel should not be excused when flagrantly violating same. We here suggest that if every lawyer practicing in this State would have for ready reference a typewritten copy of a few of the plain utterances of our courts on the importance of the

rules governing matters of appeal, it would be to the best interests of all concerned.

As applying to assignments Nos. 1 and 2, *supra,* we submit the following:

"Appellate court will not search the record for errors, existence of which is stated in general terms, in view of rule 17. [Williams v. American Exchange Bank, 280 S. W. 720.]"

"An assignment that the court erred in admitting illegal, incompetent, and irrelevant testimony, without pointing out what particular evidence was improperly admitted, is too general to be considered on appeal. [Sanzenbacher v. Santhuff, 119 S. W. 395, 220 Mo. 274.]"

"If an appellant assigns error to admission of evidence, the assignment should set out the *names of the witnesses,* and at least the *substance of the testimony improperly admitted,* and give the *page* of the *record* where found. [School Dist. of Kansas City v. Phoenix Land & Improvement Co., 249 S. W. 51, 297 Mo. 332.]" (Italics ours.)

The appellate courts of this State have never shown inclination to avoid a thorough review of all matters presented in accordance with the law and rule of procedure. However, so flagrant a violation is apparent in the specifications of error under specifications Nos. 1 and 2, above, as they fail to meet the mandatory conditions that are the essential requisites to the exercise of privilege of review.

Under appellate practice in this State, our courts review all proper assignments of error whether found under head of "Assignment of Errors" or "Points and Authorities." Under "Points and Authorities" in defendants' brief, the following appears:

"The court erred in permitting the plaintiff to state in answer to a leading question that he delivered the cattle in question to John Clay & Company and in overruling appellants' objection on the ground that the answer was a conclusion and invaded the province of the jury. The court further erred in refusing to permit cross examination of plaintiff as to the facts, if any, upon which such conclusion was based."

We conclude, under liberal constructions of our rules, that the above calls for a review of the specific matter pointed out. We will refer to the above as assignment of error No. 4 and proceed with our review as to assignments Nos. 3 and 4.

In passing upon the question of demurrer offered by defendants and refused by the court (assignment No. 3) we are confronted with many difficulties as plaintiff's cause of action is not predicated upon a written contract. However, without objection, plaintiff placed in evidence the following exhibit, to-wit:

## "EXHIBIT 1."

"STATE OF TEXAS, COUNTY OF SHERMAN ss.

"Know all Men by these Presents: That I, W. C. Martin of the County of Sherman State of Texas in consideration of the sum of

Eleven Thousand Three Hundred Ninety-one & 75-100 Dollars, to me paid by John Clay & Company the receipt of which is hereby acknowledged, have bargained and sold, and by these present do bargain and sell unto John Clay & Company, the following described cattle, hereby binding myself to warrant and defend the title to said cattle against any person claiming or to claim the same or either of them. One Hundred ninety-six (196) yearling steers; branded (—left thigh or UF right thigh or 8 left hip or JB left side, total weight 137,250 pounds.

"Witness     (W. H. Price                W. C. MARTIN
              (Orel Martin

"For value received, I hereby assign, transfer, sell and set over to The Inter State National Bank of Kansas City, Missouri, all my right, title and interest in and to the above described cattle.

"Witness my hand this ...... day of ......193....

"Witness   (............                 .........
          (............               .........

"All Endorsements to be made below
"W. C. Martin
"Pay To the Order of
"Any Bank, Banker Or Trust Co.
"38-363  *  *  38-363
"Nov. 6, 1937
"(Previous Endorsements Guaranteed)
"First State Bank
"Stratford, Texas
"Draft With Bill Of Sale Attached
"This Collection Presented by
"The Inter-State National Bank         November 5th, 1937
"This draft will not be honored unless bill of sale on the reverse side hereof is properly filled out and release of chattel mortgage or certificate of no encumbrance, by County Clerk, is attached.

"Pay to the Order of         W. C. Martin ........$11,391.75
"Eleven Thousand Three Hundred Ninety-one & 75-100 Dollars
"To the Inter State National Bank, )        Tom T. Fields
    "Kansas City, Missouri.       )
        "John Clay & Company
        "c-o Jett Duden."

After said exhibit was placed in evidence, the following is shown:

"MR. ROGERS: I will show it to Your Honor before I read it to the jury (handing Exhibit 1 to the Court).

"MR. PHILLIPS: I do want to make an objection to that: It may be pertinent and material for some purpose, but if it is relied on as the contract of sale, I object to it because it does not satisfy the Statute of Frauds; the terms of the sale are not contained in the contract. I do not know whether they are offering it as a complete contract of sale or not. If they are, I object to it.

"MR. ROGERS: I am offering it for every bit of value it has.

"MR. PHILLIPS: Well, we object to it for the reason that it does not comply with the Statute of Frauds as a contract of sale and does not state the terms of the contract, and for the further reason that the draft is not accepted as required by the laws of the State of Missouri.

"THE COURT: Objection overruled.

"To which ruling and action of the Court, the defendants, and each of them, at the time duly excepted and still except."

The plaintiff thereafter introduced exhibit No. 2 as follows:

"RELEASE OF CHATTLE MORTGAGE"
'Stratford, Texas                    Nov-6-1937

"To The County Clerk Sherman County Texas:

"You are hereby authorized to release and satisfy your records of a certain Chattle Mortgage given by W. C. Martin to First State Bank, Stratford, Texas, which said Mortgage was filed in your office about the 5th day of May 1937 the obligation secured ($453.70) having been fully discharged.

"First State Bank
"By A. M. Price
"President."

Thereafter exhibit No. 3 is offered by plaintiff. Exhibit No. 3 is a statement for cattle sold to John Craig, indicated as shipped by W. C. Martin, plaintiff herein. This statement is based upon the sale of the one hundred and ninety-six head involved in this suit except as to one marked "dead." The net proceeds ($8,819.74) are shown as remitted to The Inter State National Bank.

It is clear that the amount of damages sued for in this cause is the difference between the amount stated in exhibit No. 1 and exhibit No. 3.

As the above showing of record, together with testimony concerning the admissibility and relevancy, which we have above pointed out, is not properly before us for review, we are compelled to find against defendants on specification of error No. 3.

In connection with specification No. 4, we herein set forth questions and answers appearing in plaintiff's testimony and the objections taken thereto as follows:

"Q. (By MR. ROGERS): Do you know who John Craig is? A. No, sir, I do not.

"Q. Never heard of him before? A. No, sir.

"Q. 'Ship by W. C. Martin.' That is your name? A. Yes, sir.

"Q. 'Shipping point, Stratford, Texas,' is that where you delivered them to John Clay & Company, was it? A. Yes, sir.

"MR. FARRAR: We object to that as calling for a conclusion of the witness and invading the province of the jury, and saying it was delivered, that that is where they were delivered to John Clay & Company.

"Q. (By Mr. Rogers) : Well, they were your cattle, weren't they, Mr. Martin? A. Yes, sir.

"Q. And you did deliver them there, didn't you? A. Certainly.

"Mr. Farrar: Now, we renew our objection to that question.

"The Court: Objection overruled.

"To which ruling and action of the Court, the defendants, and each of them, at the time duly excepted and still except."

The word "delivered" is somewhat elusive. Judge Napton in Caldwell v. Garner, 31 Mo. 1. c. 134, says: "What constitutes a delivery of personal property must necessarily depend very much on the particular character of the property and the circumstances attending the alleged delivery."

If there be a contract of purchase, then delivery of personal property passes title. However, if bailment, or consignment, or conditional sale be involved, the word "delivery" has a far different import. Further, at common law, delivery is not necessary to complete a sale of personal property as between vendor and vendee.

In Bouvier's Rawle's Third Revision, Vol. 1, 1. c. 830, the following appears:

"The word delivery is used in different senses, which should be borne in mind in considering the cases. Sometimes it denotes transfer of *the property* in the chattel and sometimes transfer of *the possession* of the chattel. When used in the latter sense it may refer either to the *formation* of the contract, or to the *performance* of it. When it refers to the delivery of possession in the performance of the contract, the buyer is sometimes spoken of as being in *possession* although he has only the right of possession, while the actual custody remains with the vendor.

"A condition requiring delivery may be annexed as a part of any contract of transfer. [Salvage Mfg. Co. v. Armstrong, 19 Me. 147.]

"In the absence of contract, the amount of transportation to be performed by the seller to constitute a delivery is determined by general usage."

There is showing in the record that indicates that the triers of the fact guided by the rulings of the trial court gave consideration to the conclusion of the witness that he delivered the cattle to plaintiff, in Texas as indicating delivery in the sense of passing of title.

The trial court in passing upon objections as to testimony gives indication of that court's limitations of the issues under the pleading. It is shown that the court in passing upon an objection to evidence made by plaintiff's counsel says: "The answers set up practically a general denial, that you did not buy these cattle, nor did you agree to pay the price mentioned in the petition."

In the light of the fact that the plaintiff predicated his cause of action upon an allegation that the parties defendant constituted a partnership, "and as such partnership was engaged in the business

of buying and selling livestock," when taken together with oral testimony and plaintiff's exhibits Nos. 1 and 2 and 3, we conclude, indicate the issues of this case to be broader than the language of the court, *supra*.

With the fact of the plaintiff's statement of his conclusion that he delivered the cattle to defendants in Texas, we include herein showing of record as follows, to-wit:

"MR. FARRAR: He stated that he delivered these to the men, to John Clay & Company. These men are John Clay & Company, and we want to know how.

"MR. ROGERS: That is right, but they all live in Chicago or some other sea port.

"THE COURT: Let him answer.

"Q. (By MR. FARRAR): Did you talk to any one of those four men down there at Stratford that day? A. No, sir.

"Q. Did you deliver any of these cattle to them? A. No, sir.

"Q. Now, who did you talk to in making the sale of these cattle? A. Tom Fields.

"Q. And what price was agreed upon per hundred weight? The cattle were weighed, weren't they? A. Yes, sir.

"Q. And you weighed them over the scales? You were there when they were weighed? A. Yes, sir.

"Q. And what price did you agree upon? A. $8.30.

"Q. $8.30 per hundred weight? A. Yes, sir.

"Q. Now, where did this conversation that led up to this trade and the agreement of $8.30—where did that take place?

"MR. ROGERS: I object to the question because it appears in evidence that the agreement is in writing; therefore, all matters are absorbed by that writing. There is no evidence now to the contrary to this writing.

"MR. PHILLIPS: Now, in view of that fact we make a motion again to strike out the bill of sale draft attached, as it appears now from the statement that they are relying upon a written contract not pleaded.

"THE COURT: Objection overruled.

"MR. PHILLIPS: There is no pleading of any written contract, and for the further reason given before, that it does not satisfy the Statute of Frauds, nor the Statute requiring the acceptance of a draft, nor they have not pleaded any contract whatever.

"THE COURT: Objection overruled.

"MR. ROGERS: Now, what about my objection, Your Honor?

"THE COURT: Was that prior to the execution?

"MR. ROGERS: That is what he asked him. That question asked him that.

"THE COURT: Objection sustained.

"To which ruling and action of the Court, the defendants, and each of them, at the time duly excepted and still except.

"Q. (By MR. FARRAR): Now, you have stated that you agreed with Mr. Fields upon a price of $8.30 per hundred weight. Now, how was he—when was the weights arrived at?

"MR. ROGERS: Well, let me ask a preliminary question. Was that before or after the bill of sale was signed, was the weights arrived at before or after the bill of sale? A. Before.

"Q. (By MR. FARRAR): That is, on the same day?

"MR. ROGERS: The plaintiff objects because it now appears that there is a written contract between the people governing this transaction and therefore the matters prior thereto are immaterial to any issue in this case. There is no allegation in any pleading that attacks the validity of this agreement.

"Q. (By MR. FARRAR): I would like to ask a preliminary question. Was it on the same day, and was it, the weights and the price that were—the weights that were ascertained on that same day from which you get the figures that are in the bill of sale or draft? A. Yes, sir.

"MR. FARRAR: We submit it is part of the *res gestae* and part of the same transaction.

"THE COURT: The weights were obtained on that particular day?

"MR. FARRAR: Yes, sir.

"MR. ROGERS: It would not make any difference.

"THE COURT: Objection overruled. The original objection is sustained.

"MR. ROGERS: I beg pardon?

"THE COURT: I am sustaining your objection.

"To which ruling and action of the Court, the defendants, and each of them, at the time duly excepted and still except.

"Q. (By MR. FARRAR): Now, to whom did you weigh these cattle on the fifth day of November, 1937?

"MR. ROGERS: Why, I submit, Your Honor, that the question is impossible of answer. I do not know—I cannot object to the question because I don't know what the lawyer means by, 'to whom he weighed the cattle.'

"MR. FARRAR: He knows to whom he weighed to. He said he weighed them down there. We would like to know to whom he weighed them to.

"MR. ROGERS: I would like to know what counsel means.

"MR. FARRAR: What name, or what person did he weigh them to.

"MR. ROGERS: I object to that, because it is wholly immaterial. The contract is in evidence between these parties and that shows the agreement there.

"THE COURT: Object sustained.

"To which ruling and action of the Court, the defendants, and each of them, at the time duly excepted and still except."

From the showing of the record that we have included herein as a basis for passing upon defendants' specification of error No. 4, we

come to two conclusions: First, the trial court based its rulings upon admissibility of evidence upon the conclusion that there was a written contract between the parties for the sale of the cattle in question and that, therefore, any facts or circumstances happening before reduction to writing were inadmissible to prove that said instrument did not constitute an absolute sale; Second, we conclude that the trial court in its rulings made same as based upon its conclusions that what happened in placing the cattle in transit from Texas constituted such delivery as consummated such sale.

As to whether exhibit No. 1 constitutes an absolute written contract of sale and the transaction in Texas an absolute delivery in consummation, we do not pretend to say. However, there are matters of pleading and showing in the record from which we conclude there is an issue of fact as to whether or not exhibit No. 1 be an absolute contract of sale or not and as to whether the Texas event constituted a culminating of an absolute sale.

Transactions of sale and barter and consignment for sale in this marketing age are subject to certain well defined usages and customs which are conducive to uncertainty in the minds of Jurors and elusive to application of judicial knowledge. After a careful examination of exhibit No. 1, it appears to us as a compilation of written documents. The exhibit is indexed and referred to as a deed to cattle. The first section, executed by plaintiff alone and attested by witness, on its face indicates a sale of cattle and acknowledgment of receipt of full purchase price. Thereafter, plaintiff sells and sets over to The Inter State National Bank of Kansas City, Missouri, all of his right title and interest in the cattle. Accompanying same is what is termed a draft with bill of sale attached together with instructions.

In connection with above the plaintiff introduces its exhibit No. 3. Exhibit No. 3 shows that defendants treated the transaction as a shipment upon consignment, and remitted the proceeds to the bank to which, as shown by exhibit No. 1, the plaintiff had assigned his interest in the cattle.

In studying the record before us in considering assignment No. 3, matters directly bearing upon the attitude of the trial court in its rulings complained of in defendants specification No. 4 were directly brought to our attention. From a consideration of plaintiff's exhibits Nos. 1 and 3 and aided by a gleaning of the whole record, pleadings included, we conclude that there is presented an issue of fact as to whether or not the transaction as presented by plaintiff's exhibit No. 1, constitutes an absolute sale or a consignment to defendants for sale. Owing to narrowing of the issues by the rulings of the trial court as to matters of evidence, we conclude that the showing in the record before us is insufficient from which to determine the issue referred to above.

We conclude that defendants' specification No. 4 is well founded

in that plaintiff's answer to the leading question complained of invaded the province of the jury and in that failure of the trial court to permit defendants' counsel to cross examine as to matters in writing designated as plaintiff's exhibit No. 1, presents error in that same might have bearing on the question as to whether a sale or consignment for sale. Further, the cross examination might have challenged the effect of the conclusion that the witness was permitted to state.

Judgment reversed and cause remanded. All concur.